RIO GRANDE & E. P. RY. CO. v. RAILROAD COMMISSION OF TEXAS.
(No. 5464.)

(Court of Civil Appeals of Texas. Austin. Jan. 13, 1915. On Motion for Rehearing, April 7, 1915. Rehearing Denied May 5, 1915.)

1. CARRIERS ⬩=15—REGULATIONS—RAILROAD COMMISSION—POWERS—STATUTORY AUTHORITY.

The Railroad Commission has authority under Rev. St. 1911, arts. 6552, 6654, 6670, authorizing the Commission to fix the pro rata part of charges received by each of connecting carriers and to establish joint rates, etc., to order a division of revenue accruing to connecting carriers under freight rates applicable for transportation of coal not belonging to either carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 25–27; Dec. Dig. ⬩=15.]

On Motion for Rehearing.

2. CARRIERS ⬩=13 — REGULATIONS — STATUTORY PROVISIONS.

A carrier in an intrastate shipment is not entitled to the benefit of a joint rate on its own line for carrying its own property, in the absence of contract therefor, and an order of the Railroad Commission, which permits a carrier to charge freight rates for hauling its own property over its own road, and to participate in a division of a through rate for so doing, permits an unjust discrimination, in violation of Rev. St. 1911, arts. 6670, 6671.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 21–24; Dec. Dig. ⬩=13.]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by the Rio Grande & Eagle Pass Railway Company against the Railroad Commission of Texas. From a judgment for defendant, plaintiff appeals. Reversed, and rendered for plaintiff on motion for rehearing.

A. Winslow, of Laredo, and N. A. Rector, of Austin, for appellant. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for appellee.

### Statement of the Case.

RICE, J. Appellant owns and operates a line of railway extending from Minera to Laredo, where it connects with the line of the Texas Mexican Railway running eastwards through Pescadito to Corpus Christi. Appellant's line also connects at Laredo with the International & Great Northern Railway.

Prior to the transactions out of which this suit arose, the Railroad Commission had established a joint through rate of 80 cents per ton on coal from Minera to Pescadito, moving over the lines of appellant and the Texas Mexican Railway Company. The local rates on the same commodity established for the two roads were, for appellant, from Minera to Laredo, 65 cents per ton, and for the Texas Mexican, from Laredo to Pescadito, or the reverse, 55 cents per ton. During the month of February, 1913, eight car load shipments of coal moved over the lines of said two railways from Minera to Pescadito

under the 80 cent joint rate. It appears that said roads had no agreement as to the division of the through rate, and, when the shipments were made, appellant claimed its full local rate of 65 cents per ton to Laredo, and the Texas Mexican claimed that the 80 cents per ton should be divided equally between the two roads. In order to determine the controversy, the Texas Mexican submitted the matter of the proper division of said rate to the Railroad Commission for its decision. The eight car load shipments were specifically described in its application. The matter having been considered by the Commission, it entered the following order relating thereto:

"It is now, hereby, ordered by the Railroad Commission of Texas that the revenue accruing under the freight rates applicable for the transportation of the shipments in question, the same being car load shipments of soft coal from Minera, Tex., to Pescadito, Tex., shall be divided, between the carriers participating in the haul thereof, in proportion to the local rates of said companies actually applying to and from the point of interchange, being Laredo, Tex., through which the shipments actually moved; the local rates to be used as factors being as follows: For the Rio Grande & Eagle Pass Railway Company, sixty-five (65) cents per ton; for the Texas Mexican Railway Company, fifty-five (55) cents per ton."

Appellant being dissatisfied with this order, thereafter, on June 11, 1914, brought this suit to set it aside, alleging that it was unreasonable and unjust, and that the Commission was without authority to make the same. The petition sets out the existence of the 80-cent joint rate mentioned above, and alleged its application to be to what appellant calls "commercial coal"; the making of the shipments in question, as well as a great many other similar shipments; the existence of the controversy between the two carriers over the division of the rate; and the submission of the controversy to the Commission, and the making of the order above recited. The basis of all of the objections to the order seems to be, as stated in the petition: (a) Because the Texas Mexican Railway Company, nor any other road in this state, is entitled to participate in any dividend pro rata for hauling its own property over its own line; (b) because the Texas Mexican Railway could absorb only 15 cents per ton of the 80-cent through rate from Minera, a point on plaintiff's line, to Pescadito, a point on its own line, thus leaving plaintiff its 65 cents per ton for all hauls from Minera to Laredo. It was alleged that the coal constituting the shipments in question was bought by the Texas Mexican Railway Company from a coal company at Minera, and the same was consigned to the Texas Mexican at Pescadito. Closing, the petition contained a prayer to the effect that the specific order mentioned above be declared to be unreasonable and unjust and null and void, that it be construed, and that the enforcement thereof be enjoined.

⬩=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellee filed its answer, containing a general demurrer, special exceptions, and specific reply to the allegations of the petition that the order was unreasonable or unjust, alleging that for a long time prior to the making thereof the appellant had voluntarily been transporting coal from Minera to Laredo, and delivering the same to the International & Great Northern Railroad Company under through rates, and had been voluntarily accepting a proportion of such through rates amounting to 40 cents per ton, and, in many instances, less than 40 cents per ton. The answer also alleged that the order was reasonable, just, and valid, and that appellant did not intend to comply therewith, unless compelled so to do, and prayed that the temporary injunction be dissolved, and that judgment be entered requiring appellant to comply with said order.

On trial before the court without a jury, judgment was rendered dissolving the temporary injunction, sustaining and construing the order, and adjudging costs against appellant, from which this appeal is taken.

The above statement of the case is substantially copied from the brief of appellee.

## Opinion.

[1] We think the Commission had ample authority to make the order in question (see article 6654, subds. 5 and 6; articles 6552 and 6670, Rev. Civ. Stats. 1911), and that said order must be construed as relating and limited in its effect to the specific eight shipments referred to therein.

The chief contention on the part of appellant is that said order was unreasonable and unjust, because it permitted the Texas Mexican Railway Company to participate in the division of said joint rate, on the ground that the coal belonged to said latter company, and was not commercial coal. In reply, appellee, in its brief, insists that "if the fact that the coal composing the shipments in question was company coal could have the effect of rendering the order void or unreasonable or unjust to appellant, this fact not appearing from the face of the order itself, the burden was upon appellant to show, by clear and satisfactory evidence, that the coal was *company coal*. This not having been shown, the appellant has not made out its case upon this theory, and all the questions presented thereunder become purely moot, academic, and immaterial"—and states that there is nothing in the petition, nor in the answer, nor in the evidence, to identify this coal as company coal. This statement is not denied on the part of appellant; we therefore assume it to be true and hold that the question is not properly presented for our decision.

The order appearing otherwise to be reasonable and just, it becomes our duty to affirm the judgment of the court below, and it is so ordered.

Affirmed.

## On Motion for Rehearing.

[2] This case was on a former day of this term affirmed by this court, its ruling being based on the statement contained in the brief of the Attorney General to the effect that the coal involved in the order of the Railroad Commission was not shown to be company coal; but a careful review of the record convinces us that we were mistaken in this regard, and that in fact the coal in question referred to in said order was company coal. This makes it necessary for us to pass upon the several questions raised and urged in the brief of appellant, as to whether or not the Railroad Commission, under the facts, had a right to make an order permitting participation by the Texas Mexican Railway Company in the division of a through rate on its own line in the carriage of its own property. Since the submission of this case, the exact question, so far as the principle here involved is concerned, has been passed upon by the San Antonio Court of Civil Appeals, in the case of Rio Grande & Eagle Pass Ry. Co. v. Texas & Mexican Railway Co., 173 S. W. 236, wherein that court held that in an intrastate shipment a railroad company is not entitled to the benefit of the through rate on its own line for carrying its own property in the absence of a contract granting such right. This ruling is approved by us. We therefore conclude that appellant's assignments assailing the validity of this order on the ground that it permitted the Texas Mexican Railway Company to charge freight rates for hauling its own property over its own road, and participated in a division of a through rate for so doing, thereby permitting an unjust discrimination in violation of articles 6670 and 6671, Rev. Civ. Stats. 1911, are well taken.

We also sustain those assignments assailing said order on the ground that it was unjust and unreasonable. Hence the motion for rehearing in this case should be granted, and the judgment heretofore rendered by us set aside, and the judgment of the court below reversed, and here rendered in favor of appellant, and it is so ordered.